UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **GULF STATES LONG TERM** | **09-11116** |
| **ACUTE CARE OF COVINGTON, LLC** | |
| | SECTION A |
| DEBTOR | CHAPTER 11 |

## REASONS FOR DECISION

On October 1, 2012, the Court held a hearing on the Motion for Relief under 11 U.S.C. § 1144 and for Clarification of the Third Amended Plan[1] filed by David V. Adler, Disbursing Agent for the reorganized debtor, Gulf States Long Term Acute Care of Covington, L.L.C. (hereafter "Debtor" will refer to both the pre-confirmation and reorganized debtor).  After the conclusion of the hearing, the parties were allowed time to file supplemental briefs.  Upon filing of the briefs, the matter was taken under advisement.

Adler seeks:

1. Withdrawal of Debtor's release of claims against Robert Maurin on the basis of fraud;

2. Clarification that Debtor reserved claims for fraudulent transfer against Maurin; Jamestown, Inc.; Jamestown Gaming, L.L.C.; Gulf States Meadows, LP; Gulf States Healthcare Properties of Dallas, L.L.C.; Gulf States of Dallas Holdings, L.L.C.; New Braunfels Healthcare Properties, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties, L.L.C.; and Jamestown Healthcare Properties of Dallas, L.L.C.

3. Clarification that Debtor specifically reserved damage claims against Maurin; Gregory Walker; Gregory Frost; Jamestown, Inc.; Jamestown Gaming, L.L.C.; Gulf States Meadows, LP; Gulf States Healthcare Properties of Dallas, L.L.C.; Gulf States of Dallas Holdings, L.L.C.; New Braunfels Healthcare Properties, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties, L.L.C.; and Jamestown Healthcare Properties of Dallas, L.L.C.

---

[1] Docket no. 765.

Objections were filed by Maurin; Jamestown, Inc.; Jamestown Gaming, L.L.C.; Gulf States Meadows, LP; Gulf States Healthcare Properties of Dallas, L.L.C.; New Braunfels Healthcare Properties, L.L.C.; Frost; and Breazeale, Sachse & Wilson LLP.[2]

The parties do not dispute that the Plan gave Adler standing to pursue any claims sufficiently reserved by the Plan.

**I.   Facts**

Debtor owned a long-term healthcare facility in Covington, Louisiana. It leased the facility from MPT of Covington, L.L.C. ("MPT").

Debtor was a limited liability company whose members were Team Rehab of Covington, L.L.C. ("Team Rehab") (56.25%); Jamestown Healthcare Properties, L.L.C. (18.75%); Apex Group, II, L.L.C. (10%); David Tran, M.D. (5%); John Simon, M.D. (5%); and Craig Parker, M.D. (5%). Prior to filing for bankruptcy relief, Debtor was co-managed by Gulf States Health Services, Inc. ("GSHS") and Team Rehab.

GSHS also managed several other healthcare facilities located throughout Louisiana and Texas. Many of these were owned in whole or in part by entities affiliated with GSHS.[3]

Prepetition, Gemino Healthcare Finance, L.L.C. ("Gemino") issued a line of credit to Debtor, GSHS, and other entities. Although Debtor was an obligor on the loan and pledged its accounts receivable as collateral, during the administration of its case, John Simon, M.D., a member of Debtor, alleged that Debtor did not receive any funding from Gemino.[4]

---

[2] Docket nos. 774, 775, 801.

[3] Docket no. 245, pp.34-35 (Transcript of hearing held August 27, 2009).

[4] Docket no. 245, pp. 15-21 (Transcript from hearing held August 27, 2009).

On March 17, 2009, Simon, filed suit against Debtor; GSHS; Gregory M. Walker; Robert A. Maurin; Team Rehab; Jamestown Healthcare Properties, L.L.C.; Gulf States Health Services Management Co., L.L.C.; and Gulf States Staffing and Professional Services, L.L.C. alleging mismanagement, misappropriation of funds, breach of contract, fraud, breach of fiduciary duty and duty of loyalty, and breach of the Louisiana Unfair Trade Practices and Consumer Protection Law Act ("Derivative Action").[5] The suit sought monetary damages and injunctive relief.

On March 31, 2009, pursuant to a consent order issued by the Twenty-Second Judicial District Court, GSHS and Team Rehab withdrew as co-managers, and the Court appointed Richard Daughdrill and Robert A. Maurin as new co-managers of Debtor.

On April 20, 2009, MPT filed suit against Debtor seeking a declaration that the lease terminated due to non-monetary defaults ("MPT suit").[6]

On the same day, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). As a result, the Derivative Action and the MPT suit were stayed.

Shortly after the Petition Date, a Joint Motion to Dismiss the Bankruptcy Case[7] was filed by MPT; Craig Parker, M.D; David Turner, M.D.; and John Simon, M.D alleging that the bankruptcy

---

[5] *Simon v. Gulf States Long Term Acute Care of Covington, L.L.C., et al*, 2009-11538, Twenty-Second Judicial District, Parish of St. Tammany. The caption of the Petition for Damages and Injunctive Relief erroneously provides that it would be filed in the Twenty-Fourth Judicial District. However, it is clear from the Clerk of Court's stamp that the Petition was filed in the Twenty-Second Judicial District.

[6] *MPT of Covington, L.L.C. v. Gulf States Long Term Acute Care of Covington, L.L.C., et al*, 2009-12198, Twenty-Second Judicial District Court, Parish of St. Tammany.

[7] Docket no. 15.

3

petition was filed without the requisite authority[8] and in bad faith.[9] On August 27, 2009, a hearing on the Joint Motion to Dismiss was held concurrently with a hearing on MPT's Motion for Relief from Stay and Debtor's Motion to Use Cash Collateral and Assume Lease.[10] Counsel for Debtor, MPT, Gemino, Capital One, Craig Parker, David Turner, and John Simon all appeared at the hearing.[11] After the hearing, the parties were given a briefing schedule. However, the parties contacted the Court a few days later to request mediation before Hon. Douglas D. Dodd.[12] The record reflects that counsel for the unsecured creditors committee ("UCC") notified Judge Dodd of the UCC's intent participate in the mediation.[13] The mediation resulted in a settlement.[14] Accordingly, the Court entered an Order denying the Joint Motion to Dismiss.[15]

The Third Amended Disclosure Statement was approved by the Court on December 17, 2009, and provides:

> The Third Amended Plan of Reorganization is a direct result of the outcome of the mediation. The Cooperation Agreement, attached hereto as Exhibit "D", outlines various settlement terms reached by certain participating parties, including an

---

[8] The bankruptcy petition was signed by Maurin. The Joint Motion to Dismiss alleges that Maurin's co-manager, Daughdrill, did not consent to the filing.

[9] The Joint Motion to Dismiss alleges that the bankruptcy petition was filed in bad faith to delay MPT from exercising its rights.

[10] Docket no. 235.

[11] The Court notes that counsel who represented Doctors Parker, Turner, and Simon in connection with these motions and in the mediation is now counsel for Adler.

[12] Docket no. 237.

[13] Docket no. 251.

[14] Docket no. 258.

[15] Docket no. 268.

4

agreement to the Asset Sale by the Debtor to Pam II; settlement of the Claims of [Gemino] and Capital One; payments by PAM II to certain insiders of the Debtor, i.e., Imperial Leasing, L.L.C. and Robert A. Maurin in connection with the purchase of medical equipment for the Facility and reduction of Secured and Administrative Expense Claims; dismissal of pending litigation among various parties; and, liability releases for specified parties, as set forth herein.[16]

The Third Amended Plan with Immaterial Modification ("Plan") was approved by the Court on February 22, 2010.[17]

## II. Claims Dismissed by the U. S. District Court

On March 5, 2012, U. S. District Judge Jane Milazzo dismissed Adler's claims against Gregory Frost; Breazeale, Sachse & Wilson, LLP; Jamestown, Inc.; Jamestown Gaming, L.L.C.; Gulf States Meadows, LP; Gulf States Healthcare Properties of Dallas, L.L.C.; and New Braunfels Healthcare Properties, L.L.C..[18] The ruling is binding on the parties and this Court and cannot be collaterally attacked.[19] The request by Adler to bring claims against these parties is denied.

## III. Claims against Maurin

Debtor unequivocally released claims against Maurin. Section 6.05 of the Plan entitled "Release of Claims" provides:

> In exchange for the consideration outlined below, the Debtor's claims against MPT, Robert A. Maurin, Gemino and Capital One shall be released on the Effective Date.[20] The Debtor believes the best interest of the estate is served through these settlements, negotiated during the mediation which formed the basis of the Plan.

---

[16] Docket no. 315, p. 13.

[17] Docket no. 395.

[18] *Adler v. Walker, et al*, 11-1659, USDC, EDLA.

[19] *Oreck Direct, L.L.C. v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

[20] The Effective Date was March 17, 2010. Docket no. 434.

\* \* \*

>In exchange for the agreement of [Maurin] to the release and/or waiver of the following: (1) the Claim of Covington HealthCare Properties, L.L.C.; included in the Debtor's Schedules as an undisputed Unsecured Claim, (2) the yet to be asserted Administrative Expense Claim of Maurin for indemnity obligations owed in connection with his defense of post-Petition Date claims asserted , in the MPT Lawsuit, against him in his capacity as manager of the Debtor; (3) the yet to be asserted Administrative Expense Claim for compensation of performance of Maurin's duties as co-manager of the Debtor, (4) any objection to the Plan Maurin is entitled to assert by virtue of his interest; (5) the Claim of Jamestown Healthcare Properties, L.L.C. included in the Debtor's Schedules as an undisputed Unsecured Claim, and any and all claims asserted or which could have been asserted against Maurin in the Derivative Action shall be deemed released by the Debtor on the Effective Date.
>
>Other than those Claims (asserted and/or potential) specifically identified above, the Debtor has no existing claims against MPT, [Maurin], Gemino and/or Capital One.[21]

Adler seeks to withdraw Debtor's release of claims against Maurin on the basis of fraud. Section 1144 of the Bankruptcy Code provides that if an order of confirmation was procured by fraud, it can be revoked within 180 days of entry of the confirmation order. The Plan was confirmed nearly three years ago, and as a result, Adler's motion is untimely. Further, Federal Rule of Civil Procedure 60, is unavailable as it does not apply to a complaint to revoke a confirmation order.[22]

---

[21] Docket no. 393, section 6.05.

[22] FRBP 9024 limits an action to revoke an order of confirmation to the time limits contained in 11 U.S.C. § 1144.

>This provision places a limit on the period of time within which a party may attack a bankruptcy plan on the ground that it was procured by fraud. To allow Plaintiffs to collaterally attack the Bankruptcy reorganization on the grounds of fraud is to allow them to do indirectly what they no longer may do directly because of 11 U.S.C. § 1144.

*Hotel Corp. of South v. Rampart 920, Inc.*, 46 B.R. 758, 770-771 (E.D.La. 1985).

Adler also avers that the Court can unwind the settlement between Maurin and Debtor because doing so would not upset the Plan. This assertion is inconsistent with the position taken by Debtor at confirmation. The Plan specifically states, "The Debtor believes the best interest of the estate is served through these settlements, negotiated during the mediation which formed the basis of the Plan."[23]

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."[24] Courts invoke judicial estoppel "to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."[25] Accordingly, Debtor is judicially estopped from now taking the inconsistent position that the settlement with Maurin was unnecessary to the Plan.[26]

However, out of an abundance of caution, Adler's assertion that the Settlement was obtained by fraud will be addressed. As with any obligation or agreement, fraud may vitiate consent to settlement.[27] However, "fraud does not vitiate consent" where the party "could have ascertained the

---

[23] Docket no. 393, section 6.05.

[24] *Zedner v. U.S.*, 547 U.S. 489, 504, 126 S.Ct. 1976, 1987 (2006).

[25] *In re Ice Cream Liquidation*, 319 B.R. 324, 339 (Bankr.D.Conn. 2005).

[26] Judicial estoppel applies when a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 1238 (2010) (citation omitted).

[27] La. C.C. art. 1948.

7

truth without difficulty, inconvenience, or special skill."[28]   In making this determination, it is proper for a court to consider the "commercial sophistication" of the parties.

Debtor, MPT, Team Rehab, GSHS, Gemino, Capital One, Craig Parker, David Turner, John Simon, Pam II, and the UCC were involved in the mediation.[29] Each of the participants was represented by counsel and was entitled to avail itself to the benefits of discovery. The parties are knowledgeable and sophisticated. Debtor was represented by counsel and employed professional accountants during the course of the negotiations and the administration of the case. In addition, a UCC was represented by counsel and participated in the settlement negotiations. The Derivative Action was well-known to the partners and alleged that Debtor's funds were misappropriated through diversion by GSHS to other entities. This created certain causes of action for malfeasance against its officers and directors and possible causes of action against the entities receiving the funds. The allegations were repeated in the Motion for Relief from Stay filed by MPT.[30] The Motion for Relief from Stay also includes an allegation that even after Maurin and Daughdrill were appointed co-managers of Debtor by the state court, $450,000 of Debtor's funds were diverted to other entities.[31] Debtor had an obligation to determine the facts through discovery before entering into a broad release of claims. The same applies to the UCC who not only participated in the settlement, but orally withdrew its objection to the Plan at the confirmation hearing. Sophisticated

---

[28] La. C.C. art. 1954.

[29] The Court notes that Mr. R. Joshua Koch represented John Simon, Craig Parker, and David Turner preconfirmation. Mr. Koch was active throughout the case and in the settlement negotiations. Mr. Koch is now counsel for Adler.

[30] Docket no. 43, ¶ 3 and 4.

[31] *Id.* at ¶ 30.

parties who neglect to ascertain all the facts before entering into a settlement cannot have the settlement set aside when new facts, not to their liking, emerge.[32]

For the reasons stated above, Debtor's claims against Maurin were released.

Adler avers that the Plan only released claims against Maurin in the Derivative Action. In the first paragraph of section 6.05 of the Plan, entitled "Release of Claims," Debtor provided that all claims against Maurin would be "deemed released on the Effective Date." The section describes the known claims of Debtor against Maurin as, "[A]ny and all claims asserted or which could have been asserted against Maurin in the Derivative Action." The next paragraph asserts that Debtor knows of no other claims against Maurin. The description of known claims does not limit the release initially provided. Further, the release of all claims that "*could have been asserted*"[33] in the Derivative Action encompass more than the claims actually asserted.

Derivative actions are state law claims. Louisiana law provides that "[a] plaintiff may cumulate against the same defendant two or more actions even though based on different grounds" as long as 1) jurisdiction and venue are proper, and 2) the actions are "mutually consistent and employ the same form or procedure."[34]

> A true cumulation of actions exists, ... where a plaintiff against the same defendant pleads as grounds, two different factual circumstances, each of which might entitle him to certain relief.[35]

---

[32] *See, Southmark Corp. v. F.D.I.C.*, 142 F.3d 1279, 1998 WL 224537, *4 (5th Cir. 1998) (A release executed by sophisticated businesses represented by counsel is enforceable as written.)

[33] Emphasis added.

[34] La. C.C.P. 462.

[35] *Harris v. Bardwell*, 373 So.2d 777, 781 (La.App. 2 Cir. 1979).

Any cause of action that Debtor could have asserted against Maurin falls into this category, and was, thus, released by the Plan.

Because Debtor was unaware that certain claims existed at confirmation, Adler asserts they were not released. Adler also avers that claims that arose post-petition, but pre-confirmation, were not released. Section 6.05, paragraph one, contains a general release.

> When a release is general on its face, there must be evidence that the parties intended to exclude a specific cause of action from the general release for it not to be covered.[36]

Debtor did not exclude unknown claims in its release, nor did it limit the claims released to prepetition causes of action. Thus, any claim that existed, whether or not it was known to Debtor, was released.

Several defendants were not included in the Plan release. However, some of these defendants are allegedly owned or controlled by the released parties. Adler asserts that because the released parties failed to observe corporate formalities, he may assert claims against third parties and include the defendants based on veil piercing theories of recovery.

Specifically, Adler indicates that he will sue Maurin under a veil piercing theory in relation to claims for fraudulent transfer against Gulf States Health Services, Inc., Team Rehab, and Gulf States Long Term Acute Care of New Orleans, L.L.C. which were specifically reserved in the Plan.[37] Due to the specific and unequivocal reservation of fraudulent transfer claims against Gulf States Health Services, Inc., Team Rehab, and Gulf States Long Term Acute Care of New Orleans, L.L.C.,

---

[36] *Burtch v. Avnet, Inc., et al. (In re Managed Storage Intern., Inc.)*, 2012 WL 5921723, *7 (Banrk.D.Del. 2012) (citation omitted).

[37] Docket no. 393, section 6.04.01.

Adler may sue them on such claims. To the extent successful, collection may be enhanced through a veil piercing theory of recovery.

Using the alter ego doctrine to pierce the corporate veil is an equitable remedy, not an independent cause of action.[38]

> A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural. A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.[39]

The relief Adler seeks is not a cause of action against a released defendant but a means of collection against a third party controlled by the defendant. Because a veil piercing remedy is not an independent cause of action against Maurin, it was not released and is not precluded by the Plan. The general release was in favor of Maurin. It specifically reserved causes of action for fraudulent conveyance against Team Rehab; Gulf States Health Services, Inc.; Team Rehab of Covington, LLC; Gulf States Health Services Management Company, L.L.C.; Gulf States Staffings and Personnel Services, L.L.C.; Gulf States Long Term Acute Care of Denham Springs, L.L.C.; Gulf States Long Term Acute Care of New Orleans, L.L.C.; Gulf States LTAC of New Bruanfels, L.L.C.;

---

[38] *Peacock v. Thomas*, 516 U.S. 349, 354, 116 S.Ct. 862, 867 (1996); *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999); *Grothues v. I.R.S. (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000); *Western Oil & Gas JV, Inc. v. Griffiths*, 91 Fed.Appx. 901, 904, 2003 WL 22945813, *2 (5th Cir. 2003); *Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, n. 2 (8th Cir. 2006); In re EBW, 2009 WL 116995, *5 (Bankr.M.D.N.C. 2009).

[39] *Fletcher Cyclopedia of the Law of Corporations* § 41.10.

11

Gulf States of Morgan City Holdings, L.L.C.; Gulf States of Nevada, L.L.C.; and Gregory Walker, and therefore, any means to collect on those claims.

## IV.    Jamestown Healthcare Properties, L.L.C.

The Immaterial Modifications to the Plan,[40] which were approved by the Court,[41] contain a modification to the Cooperation and Transfer Agreement that release both Maurin and Jamestown Healthcare Properties, L.L.C. "from any causes of action in favor of, or from direct, indirect or derivative liability to, any and all of the Debtor Parties."[42] The release of claims against Jamestown Healthcare Properties, L.L.C. is specific and unequivocal, and the Immaterial Modifications were confirmed in the Order confirming the Plan.[43] Therefore, Debtor's claims against Jamestown Healthcare Properties, L.L.C. were released, and Adler may not pursue them.

## V.    Avoidance Actions

Adler asserts that the Plan contains a specific reservation of avoidance actions. The Plan provides:

> The Debtor presently knows of no viable action for the avoidance of preferential transfers, as the Debtor made no direct payments to any party prior to April 2009, the month in which the case was commenced. Prior to April 2009, the managing entities for the Debtor's operations made all payments associated with the Debtor's obligations. Potential fraudulent conveyance actions exist against the Debtor's former management and/or related parties, namely, .... All such claims and causes of action, ... shall be retained ...[44]

---

[40] Docket no. 359.

[41] Docket no. 395, ¶ A.

[42] Docket no. 359, Exhibit B, ¶ 19.

[43] Docket no. 395, ¶ A.

[44] Docket no. 393, section 6.04.01.

Plans are subject to general rules of contract interpretation.[45] "The language of these documents taken as a whole, if unambiguous, is the controlling expression of these parties' intentions."[46] There is no indication that the retention of "[a]ll such claims and causes of actions" refers to anything but the potential fraudulent conveyance actions which precede it. Therefore, the Court finds that preference actions were not specifically retained by the Plan.

## VI. Fraudulent Transfer Claims against Gregory Walker

The Plan specifically and unequivocally reserved fraudulent transfer claims against Gregory Walker.[47]

> Potential fraudulent conveyance actions exist against the Debtor's former management and/or related parties, namely, ... Gregory Walker. All such claims and causes of action, including any and all rights and interests of the Debtor with respect to the D&O policy, shall be retained by the reorganized Debtor ... The Disbursing Agent shall have the sole authority to direct the reorganized Debtor to prosecute, compromise, or abandon such claims ...[48]

Therefore, Adler may pursue fraudulent conveyance actions against Walker.

## VII. All Claims against Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties of Dallas, L.L.C.; and Damage Claims against Gregory Walker

The Plan does not release Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties of Dallas, L.L.C. or Gregory Walker. The Plan does contain a general reservation of "[a]ny and all claims and causes of action which may have

---

[45] *Electric Reliability Council of Texas, Inc. v. May (In re Texas Comm. Energy)*, 607 F.3d 153, 158 (5th Cir. 2010) (citation omitted).

[46] *Id.* (citation omitted).

[47] Docket no. 393, section 6.04.01.

[48] *Id.*

13

been asserted by the Debtor prior to the Effective Date, other than those released by the Debtor under the terms and conditions of the Plan..."[49]

Any analysis regarding the sufficiency of a reservation of claims provision begins with an examination of the status of the party affected. If a debtor seeks to assert a claim against a creditor, the reservation is examined *vis-a-vis* the plan's treatment of the claim. The description of the reserved claim must be sufficiently clear so as to put the creditor on notice that its treatment under the plan might be affected by the pursuit of the reserved claim. A clear reservation of a cause of action provides the creditor with the information necessary to vote for or against the plan. However, if the claim is against a nonvoting, nonclaimant, disclosure of the claim is not critical to the vote on confirmation because a third party noncreditor is not involved in the administration of the case.

Because the reservation of a claim against a third party enures to the benefit of general creditors, the details of its nature are presumably less than critical to a decision to vote for or against a plan. Certainly the party against whom a claim is reserved cannot complain of a debtor's right to sue. Therefore at the outset, it is important to note that Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties of Dallas, L.L.C.; and Gregory Walker are not creditors of Debtor's estate.

*Dynasty Oil and Gas, L.L.C. v. Citizens Bank, et al (In re United Operating, L.L.C.)*[50] involved the reservation of Bankruptcy Code Chapter 5 avoidance actions against a creditor. The plan did not, however, reserve state law fraud claims. The defendant was the primary creditor of

---

[49] *Id.* at 6.04.02.

[50] *Dynasty Oil and Gas, L.L.C. v. Citizens Bank, et al (In re United Operating, L.L.C.)*, 540 F.3d 351 (5th Cir. 2008).

14

the debtor, and prior to confirmation, all Chapter 5 claims were settled with this creditor. Under these circumstances, the Fifth Circuit had little difficulty finding that the debtor's failure to reserve state law causes of action released them.

In *In re Texas Wyoming Drilling Co.*,[51] the disclosure statement described reserved claims as those against "[v]arious pre-petition shareholders of the Debtor" for "fraudulent transfer and recovery of dividends" of approximately $4 million.[52] The Fifth Circuit found the reservation in the disclosure statement put the shareholders on sufficient notice of "the existence of the Avoidance Actions, the possible amount of recovery to which they would lead, the basis for the actions, and that the reorganized debtor intended to pursue the claims."[53]

In *Compton v. Anderson, et al (In the Matter of MPF Holdings US LLC, et al)*,[54] the Fifth Circuit found the following reservation of Chapter 5 avoidance actions sufficient:[55] "all Causes of Action, including but not limited to, (1) any Avoidance Action that may exist against any party identified on Exhibits 3(b) and (c) of the Debtor's statements of financial affairs." While the defendants were listed on Exhibits 3(b) and (c), the debtor had previously settled preference claims against the defendants as part of a bankruptcy court sale. Further, in the course of its administration,

---

[51] *In re Texas Wyoming Drilling Co.*, 647 F.3d 547 (5th Cir. 2011).

[52] *Id.* at 549.

[53] *Id.* at 551.

[54] *Compton v. Anderson, et al (In the Matter of MPF Holdings US LLC, et al)*, 701 F.3d 449 (5th Cir. 2012).

[55] The Fifth Circuit, however, remanded the case to determine if the defendants to the avoidance actions had been released by the plan. *MPF Holdings*, 701 F.3d at 457.

15

the debtor had also assumed the defendants' prepetition executory contracts, in effect releasing any potential Chapter 5 claims.

In *MPF Holdings*, the Fifth Circuit clarified its holdings in *National Benevolent Association of the Christian Church (Disciples of Christ) v. Weil, Gotshal & Manges, LLP (In re National Benevolent Association of the Christian Church (Disciples of Christ)*[56] by explaining that not every ambiguity in a reading of a reservation of claims will enure to the benefit of the defendant. Plans are subject to reasonable interpretation under the rules of contract.

> It follows that a finding that one party's interpretation of the plan is reasonable cannot alone support a finding that a plan is ambiguous. If a court applies contract interpretation principles and finds that the only reasonable interpretation of the Plan is that certain parties were released, that would not render the reservation insufficiently specific and unequivocal. Instead, it would mean that claims against those parties fall outside the scope of the reservation.[57]

In *MPF Holdings*, the Court found that the plan specifically excluded released claims from those reserved. Since the prior authorized court sale and the assumption of prepetition executory contracts released the Chapter 5 causes of action against the defendant/creditors, no claims were reserved.

Each of these cases involved creditor/defendants rather than third parties. In each case, the sufficiency of the reservation affected the treatment of the claimant. In each case, the plan's language appeared to exclude any claims against the defendant/creditor, and presumably, this led each to vote for confirmation.

---

[56] *National Benevolent Association of the Christian Church (Disciples of Christ) v. Weil, Gotshal & Manges, LLP (In re National Benevolent Association of the Christian Church (Disciples of Christ),* 333 Fed.Appx. 822 (5th Cir. 2009).

[57] *MPF Holdings*, 701 F.3d at 457.

This case involves non-creditor parties.  Therefore releases do not impact the votes of creditor/defendants.  Instead, these third parties seek to gain an advantage by claiming ambiguity exists in the Plan's reservation of claims against them.

> [A] creditor in the bankruptcy is entitled to know about claims that will be pursed post-confirmation under the proposed plan, either because those claims might "enlarge the estate," or [*Harstad v. First American Bank*, 39 F.3d 898, 903 (8th Cir. 1994)], because the claims might be aimed at the creditor himself, *In re Kelley*, 199 B.R. 698, 703 (9th Cir. BAP 1996).  Armed with this information, so the theory goes, the creditor can "adjust its vote accordingly."  *Goodman Bros. Steel Drum Co. v. Liberty Mut. Ins. Co. (In re Goodman Bros. Steel Drum Co.)*, 247 B.R. 604, 608 (Bankr.E.D.N.Y. 2000); *see also Harstad*, 39 F.3d at 903; *Kelley*, 199 B.R. at 703.
>
> This rationale disappears entirely, however, when the defendant in a post-confirmation action is not a creditor.  Specific or general, adequate or inadequate, notice to a non-creditor about claims reserved in a proposed plan serves no purpose because a non-creditor cannot vote on whether the plan should be confirmed.  *See* [*Moecker v. Johnson, et al (In re Transit Group, Inc.)*, 332 B.R. 45, 57 (Bankr.M.D.Fla. 2005); [*The Elk Horn Coal Co., LLC v. Conveyor Manuf. & Supply, Inc. (In re Pen Holdings, Inc., et al)*, 316 B.R. 495, 504 (Bankr.M.D.Tenn. 2004)] (stating that section 1123(b)(3)(B) "is not designed to protect defendants from unexpected lawsuits"); [*In re Kmart Corp.*, 310 B.R. 107, 120 (Bankr.N.D.Ill. 2004)] (noting that a plan's retention provision "is directed towards the estate's creditors, not the potential defendants on the reserved claims").[58]

If non-creditor third parties were allowed to claim ambiguity, Adler would have no right to pursue these causes of action, the assets would be lost, and distributions to creditors would be reduced.

> Nothing in the Bankruptcy Code or legislative history suggests that confirmation of a plan was to have the effect of barring the debtor from pursuing undisclosed assets in the case.  Moreover, absent special circumstances, at a confirmation hearing, the debtor's only obligation is to satisfy the standards outlined in 11 U.S.C. § 1129 as well as other applicable provisions of the Bankruptcy Code.  Section 1129 does not

---

[58] *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP, et al (In re Commercial Loan Corp).*, 363 B.R. 559, 570 (Bankr.N.D.Ill. 2007).

require the debtor to include every dispute it may have had involving specific entities with which it had commercial relationships.[59]

Even the Bankruptcy Rules do not require that noncreditors such as Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties of Dallas, L.L.C.; and Gregory Walker receive notice of the hearings to consider approval of the disclosure statement and plan or of the deadline to file objections to the disclosure statement or plan.[60] Only "a party in interest" has standing to object to confirmation of a plan.[61] Generally, noncreditor third parties lack standing to object to confirmation of a plan.[62] If they could not object to the plan prior to its approval by the Court, it follows that they cannot now object that the plan is ambiguous. Plans are confirmed as being in "the best interest of creditors." "As its name implies, the best interest of the creditors test only applies to creditors."[63]

Therefore, the Plan's general reservation of "[a]ny and all claims and causes of action which may have been asserted by the Debtor prior to the Effective Date, other than those released by the Debtor under the terms and conditions of the Plan..."[64] sufficiently reserved causes of action against Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare

---

[59] *S.N.A. Nut Co. v. The Haagen-Dazs Co., Inc. (In re S.N.A. Nut Co.)*, 215 B.R. 1004, 1011 (Bankr.N.D.Ill. 1997) (citations omitted).

[60] FRBP 2002(b). (Notice of the hearings and deadline to file objections must be sent to the debtor, the trustee, all creditors, and indenture trustees.)

[61] 11 U.S.C. § 1128(b).

[62] *In re Cypresswood Land Partners I*, 409 B.R. 396, 430 (Bankr.S.D.Tex. 2009).

[63] *In re W.R. Grace & Co.*, 45 B.R. 34, 145 (D.Del. 2012).

[64] *Id.* at 6.04.02.

18

Properties of Dallas, L.L.C.; and Gregory Walker. Adler may pursue any of Debtor's claims against these parties and any means to collect on those claims.

**VIII. Conclusion**

For the reasons assigned above, the Court finds that Adler may not pursue any claims against Maurin; Gregory Frost; Breazeale, Sachse & Wilson, LLP; Jamestown, Inc.; Jamestown Gaming, L.L.C.; Gulf States Meadows, LP; Gulf States Healthcare Properties of Dallas, L.L.C.; Gulf States of Dallas Holdings, L.L.C.; New Braunfels Healthcare Properties, L.L.C.. However, Adler is entitled to pursue Debtor's claims against Gulf States of Dallas Holdings, L.L.C.; B & G Healthcare Properties, L.L.C.; Jamestown Healthcare Properties of Dallas, L.L.C.; and Gregory Walker. Adler may also pursue, if successful on any retained causes of action, all means of collection, including, but not limited to, the assertion of veil piercing or alter ego theories of recovery against Maurin. Accordingly, the Motion for Relief under 11 U.S.C. § 1144 and for Clarification of the Third Amended Plan[65] is granted in part and denied in part. A separate Order will be entered in accord with these Reasons.

New Orleans, Louisiana, February 26, 2013.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[65] Docket no. 765.