UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO.

**GULF STATES LONG TERM ACUTE**                               **09-11116**
**CARE OF COVINGTON, L.L.C.**
                                                                                          SECTION A
DEBTOR                                                                            CHAPTER 11

## REASONS FOR DECISION

This matter came before the Court on February 25, 2014, on the Motion to Compel Subpoena Return filed by David V. Adler, Disbursing Agent for the Reorganized Debtor ("Disbursing Agent").[1]   At the conclusion of the hearing, the Court took the matter under advisement.

**I.  Jurisdiction**

Post-confirmation, bankruptcy courts have jurisdiction over "matters pertaining to the implementation or execution of the plan."[2]   The Order Confirming Plan dated February 22, 2010 ("Confirmation Order"), specifies that this Court retains jurisdiction over:

> [T]he Debtor, Reorganized Debtor, all creditors, equity interests and all matters relating or pertaining to the Plan, and matters reserved in Article VIII of the Plan, and all causes of action to be maintained by the Debtor and Reorganized Debtor.[3]

Gulf States Long Term Acute Care of Covington, L.L.C 's ("Debtor") Third Amended Plan of Reorganization with Immaterial Modifications ("Plan")[4] transferred the majority of its assets to a third party, PAM II of Covington, L.L.C. ("PAM II").   The remaining assets vested in the Debtor:

---

[1] P-904.

[2] *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388 (5th Cir. 2001).

[3] P-395, ¶ L.

[4] P-393.

> Except as specified otherwise in the Plan or in this Order, upon the Effective Date but subsequent to the effectiveness of the Cooperation and Transfer Agreement, any and all property of the Debtor's estate which has not previously been transferred, shall be transferred and vest in the Reorganized Debtor...

Specifically excepted from transfer to PAM II were certain causes of action.[5] The Disbursing Agent was then given sole authority to pursue those causes of action as the Debtor's agent. Accordingly, this Court has jurisdiction to decide whether the Disbursing Agent has authority to obtain information of the Debtor subject to the attorney-client privilege if done in connection with the pursuit of causes of action reserved in the Plan. This Court will defer questions regarding discovery matters to the United States District Court where litigation is currently pending.

**II. Findings of Fact**

On April 20, 2009, the Debtor filed a voluntary petition for bankruptcy relief under chapter 11 of the U. S. Bankruptcy Code.

On February 22, 2010, the Court issued a Confirmation Order confirming the Debtor's Plan.[6] The Plan provides that claims and causes of action for specified avoidance and fraudulent transfer actions are retained by the "reorganized Debtor which shall continue to exist post-confirmation until the later of the date such claims have been prosecuted to final judgment, compromised, or abandoned as directed by the Disbursing Agent."[7] However, "[t]he Disbursing Agent shall have

---

[5] Section 6.02 of the Plan provides that "any claims reserved to the Debtor" in the Plan are excepted from the sale to PAM II.

[6] P-394.

[7] P-393, ¶ 6.04.01.

2

the sole authority to direct the reorganized Debtor to prosecute, compromise, or abandon such claims."[8]

According to the Confirmation Order, all proceeds of causes of action are "transferred to and retained by the Disbursing Agent as the duly appointed representative of the Reorganized Debtor," and the Disbursing Agent also has the authority to "prosecute, settle, or dismiss" claims as he "sees fit."[9]

Pre-petition, the Debtor's legal counsel was Breazeale Sachse & Wilson, L.L.P. ("BSW") and Gregory Frost ("Frost"), a BSW partner. On March 19, 2013, the Disbursing Agent caused the Debtor to serve subpoenas duces tecum on Frost and BSW commanding them to produce:

> All files and records relating to the legal representation of [Debtor] by [Frost] and [BSW].
>
> NOTE: These records are to include all notes and records of communications with, among others, [Frost], Robert A. Maurin, Joe Justice, Bobbie Kole, Chris Smith, Gemino and/or Gregory Walker, including documents containing information developed on behalf of or during the course of your representation of [Debtor]. This request includes, but is not limited to, all statements or invoices for fees and expenses incurred in connection with this representation.[10]

No returns were made on the subpoenas, and the Disbursing Agent filed a Motion to Compel Subpoena Return ("Motion").[11] Frost and BSW filed an Opposition to the Motion asserting:

(1) Adler failed to conference with counsel for BSW and Frost prior to filing this Motion;

(2) Adler improperly filed the Motion in the bankruptcy case;

---

[8] *Id.* at ¶¶ 6.04.01 and 6.04.02.

[9] P-395, ¶ I.

[10] P-904, Exhibit B.

[11] P-904.

(3) Adler failed to personally serve the subpoena;

(4) Adler lacks authority to waive the attorney-client privilege or work product doctrine;

(5) Production of all the Debtor's files "would impose a significant and unfair burden."[12]

The Debtor has neither filed a response nor an objection.

### III. Law and Analysis

#### A. Attorney-Client Privilege

The attorney-client privilege is the oldest of the privileges of confidential communications known to law. Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.[13]

The privilege provides that:

A client has a privilege to refuse to disclose, and to prevent another from disclosing a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or representative of the lawyer.

(2) Between the lawyer and a representative of the lawyer.

(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.

(4) Between representatives of the client or between the client and a representative of the client.

(5) Among lawyers and their representatives representing the same client.

---

[12] P-906.

[13] *Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 682 (1981) (citations omitted).

(6) Between representatives of the client's lawyer.[14]

The burden of proof is on the party claiming the privilege.[15]

The elements required for recognition of the attorney-client privilege are as follows:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.[16]

The client, not the attorney, holds the attorney-client privilege."[17] Since the client holds the privilege, only the client or his agent may waive it.[18] An attorney may assert the privilege on the client's behalf when subpoenaed to produce confidential documents.[19] However, an attorney cannot assert the privilege "for his own benefit when his client desires to waive it."[20]

---

[14] *U.S. v. Edwards*, 39 F.Supp.2d 716, 722-23 (M.D.La. 1999) (quoting LSA-C.E. art. 506(B)).

[15] *King v. University Healthcare System, L.C.*, 645 F.3d 713, 720-721 (5th Cir. 2011).

[16] *U.S. v. Edwards*, 39 F.Supp.2d at 723-724 (citing *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978).

[17] *Id.* at 735. *See also* LSA-C.E. art. 506(D).

[18] Broun, Kennth S., 1 McCormick on Evid. § 93 (7th ed.).

[19] *Schwimmer v. U.S.,* 232 F.2d 855, 863 (8th Cir. 1956).

[20] *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551 (2nd Cir. 1967). The fact that there has been no response or objection by the Debtor to the subpoenas lends support to the

5

In a Bankruptcy Case under Chapter 11 in which no trustee has been appointed, the debtor-in-possession "controls the attorney-client privilege with respect to both its pre- and post-petition communications."[21] Once a plan of reorganization is confirmed, all property of the estate vests in the reorganized debtor unless transferred to a third party in the plan.[22]

The Plan and Confirmation Order gave the Disbursing Agent the sole authority to direct and prosecute claims and causes of action on the Debtor's behalf. The Disbursing Agent is the Debtor's agent with regard to these claims and causes of action as the Debtor retains ownership in the claims. Louisiana law governs the Plan.[23] Under Louisiana law, an agent or mandatary:

> [M]ay perform all acts that are incidental to or necessary for the performance of the mandate.
>
> The authority granted to a mandatary to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of this profession or calling, need not be specified.[24]

In accord with his mandate, the Disbursing Agent has sought production of all the Debtor's legal files and records pertaining to the very contracts and activities from which the causes of action he must manage arise. This Court finds that the Disbursing Agent's mandate to direct and prosecute claims and causes of action requires the Disbursing Agent to have access to the same materials available to the Debtor.

---

finding that the Debtor and Plan gave the Disbursing Agent the authority to obtain this information.

[21] *American Metrocomm Corp. v. Duanne Morris & Hecksher L.L.P. (In re American Metrocomm Corp.)*, 274 B.R 641, 654 (Bankr.D.Del. 2002).

[22] 11 U.S.C. § 1141.

[23] P-393, ¶ 10.02.

[24] La. C.C. art. 2995.

Implicit in the Disbursing Agent's authority to pursue causes of action on behalf of the Debtor is access to the communications between the Debtor and his attorneys that bear on the claims and causes of action that the Disbursing Agent must direct and prosecute. Since the Disbursing Agent stands in the shoes of the Debtor, to deny access would undermine *the Debtor's* (or client's) ability to prosecute claims.

BSW and Frost characterize this request as necessitating a waiver of attorney-client privilege. BSW and Frost's position is incorrect as this matter does not involve waiver of the privilege but instead transfer of the legal files to the client through its agent. A client may direct the production of documents to an agent without waiving the privilege if the production is necessarily required to prepare for the legal representation of the client.[25]

For example, if a client retains new counsel, delivery of former counsel's files to new counsel does not waive the privilege.[26] Nor is the privilege waived if counsel provides privileged information to a professional in preparation for trial, as for example with an accountant assisting in the trial.[27] Nor is it waived if provided to an employee representing the client, *i.e.*, the president of a corporate client.[28] Similarly, when the Disbursing Agent acts as the representative of the reorganized debtor in connection with the files, no privilege is waived.

---

[25] LSA-C.E. art. 506(B)(4) provides that the privilege applies "when the communication is ... between representatives of the client or between the client and a representative of the client."

[26] *Mose v. Keybank Nat. Ass'n.*, 2011 WL 2790199 (M.D.La. 2011).

[27] *Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1143 (La. 1987).

[28] *See Upjohn*, 449 U.S. at 392.

Further, the delivery of this information does not offend the public policy or principle behind the privilege. Here, BSW and Frost are objecting to the Debtor's property or files being delivered to the Debtor's substitute counsel (the Disbursing Agent's counsel) and the Debtor's agent. To argue that the very files upon which the Debtor (through the Disbursing Agent) seeks recovery are off bounds to the Debtor is illogical and indefensible.

> The rationale for the privilege was described by the Louisiana Supreme Court in *Succession of Smith v. Kavanaugh, Pierson & Talley* as follows:
>
>> The lawyer's exemption from disclosing his client's secrets is justified on the ground that claims and disputes which may lead to litigation can most justly and expeditiously be handled by practiced experts, namely lawyers, and that these experts can act effectively only if they are advised of the facts by the parties who they represent. Full disclosure will be promoted if the client knows that what he tells his lawyer cannot, over his objection, be extorted in court from his lawyer's lips. The privilege also promotes compliance with the law, particularly in complex areas of business law such as antitrust, securities, and tax. The attorney to whom confidence are freely expressed has a greater opportunity to learn of and counsel against potentially unlawful conduct.[29]

The Disbursing Agent is acting for the Debtor, and the subpoenas were initiated on behalf of the Debtor. The Disbursing Agent is enforcing or prosecuting the Debtor's rights. Thus, the information is requested in order to protect the Debtor. The Disbursing Agent is in no way adverse to the Debtor as he is acting solely as the Debtor's agent.[30] Thus, the policy behind protecting communication between client and attorney is not violated as the Disbursing Agent is the client.

---

[29] *U.S. v. Edwards*, 39 F.Supp.2d at 724 (quoting *Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138 (La. 1987)(citation omitted)).

[30] Neither is the Disbursing Agent adverse to BSW or Frost as both have been dismissed from the litigation. Since the information sought by the Disbursing Agent is in aid of the principal and BSW and Frost's client, the refusal to provide the information is curious indeed.

The Court finds that in order to give effect to the Plan, the Debtor implicitly gave authority to the Disbursing Agent to obtain all information otherwise belonging to the Debtor and subject to the privilege. Therefore, the privilege is not implicated and BSW and Frost must produce the Debtor's legal files and communications with counsel. Because the privilege is not implicated and this Court finds that the files are property of the Reorganized Debtor, and because Adler, as the Reorganized Debtor's agent, is entitled to Debtor's legal files, BSW and Frost's objections that Adler failed to conference with counsel, filed the Motion in the wrong forum, failed to personally serve the subpoena, and that production will impose a significant and unfair burden also fail.

**B. Work Product**

Disclosure of work product is protected by F.R.C.P. 26(b)(3), which is made applicable to this proceeding by F.R.B.P. 7026. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[31]

> "[T]he work product [protection] belongs to both the client and the attorney, either of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." The protection can, of course, be overcome as to either or both of the involved parties...[32]

"[T]he work product doctrine does not apply to the situation in which a client seeks access to [work product] amassed by his attorney during the course of the representation."[33]

> "The work product doctrine pertains to materials ... sought by an adversary of the attorney's client." [*Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982)]; *see also* [*In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999)] (stating that individual debtor's concern about incrimination "does not entitled an attorney to withhold from a client's trustee in bankruptcy work-product prepared for the client's pre-petition lawsuits, so

---

[31] F.R.C.P. 26(b)(3)(A).

[32] *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009) (citations omitted).

[33] *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982).

9

    long as the trustee and the client are not adverse in those suits"). There is a distinction between situations where the attorney's assertion of the work product privilege benefits the client, and situations like the instant proceeding where assertion of the privilege acts to the client's detriment. To allow [an attorney] to invoke the privilege would inhibit [their client's] chances of maximizing recovery of its portion of the [claims] and contravene the bankruptcy goal of maximizing [the debtor's] estate for the benefit of all creditors. It would also contravene the privilege's purpose of promoting the adversarial system and preventing [an attorney's] work product from being used against their clients. *See* [*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991)].[34]

F.R.C.P. 26(b)(3)(A) clearly only prevents discovery of work product prepared "by or for another party or its representative." The attorney's client does not fall into that category, and the Disbursing Agent is standing in the shoes of the client.

    F.R.C.P. 26(b)(3)(B) provides that when a court allows discovery of work product "it must protect against disclosure of mental impressions, conclusions, opinions, or legal theories." However, again this is as to third parties, not clients.

    [A] law firm should not have an independent right to prevent production of its work product, even opinion work product, when the interests of the former client and the law firm are not aligned, and the interests of the former client show a compelling need for production of the information.[35]

Therefore, the work product doctrine does not apply.

**IV. Conclusion**

    The Court finds that neither the attorney-client privilege nor the work product doctrine prevent the Disbursing Agent from obtaining the Debtor's files held by BSW and Frost. This Court will defer the question of which files and work products are related to or concern the causes of

---

[34] *American Metrocomm Corp.*, 274 B.R at 656.

[35] *S.E.C. v. McNaul*, 271 F.R.D. 661, 667 (D.Kan 2010).

actions reserved for investigation and prosecution by Adler to the United States District Court where litigation is currently pending. However, this Court finds that any and all files or work product belonging to the Reorganized Debtor and which are related to or which may provide information concerning any cause of action or claim for which Adler is responsible must be included in Adler's turnover request. Accordingly, the Motion is granted in part, and the Court abstains in part. A separate Order will be rendered in accord with these Reasons.

    New Orleans, Louisiana, May 1, 2014.

                                        Hon. Elizabeth W. Magner
                                        U.S. Bankruptcy Judge